**UNITED LACQUER MFG. CORP. v. MAAS & WALDSTEIN CO. et al.**

Civ. A. No. 764–52.

United States District Court
D. New Jersey.
. March 18, 1953.

140

Harry Sommers, Newark, N. J., for plaintiff.

Stryker, Tams & Horner, by R. Paul Mitchell, Newark, N. J., for defendant Maas & Waldstein Co.

HARTSHORNE, District Judge.

Plaintiff, United Lacquer Manufacturing Corporation, sues defendants, Mass & Waldstein Company, a New Jersey corporation, and also the New York corporation of the same name, as well as John C. Zola, for a declaratory judgment, Title 28 U.S.C. §§ 2201, 2202, involving the patent laws, Title 28 U.S.C. § 1338, 35 U.S. C. §§ 1 et seq., 154. The complaint alleges Zola to be the patentee of certain coating compositions, including mottled paints, of which patent Maas & Waldstein is a licensee, and that such defendant has threatened certain of plaintiff's customers with suits for the infringement of above patent by plaintiff by the sale of plaintiff's mottled paints and coating compositions. Plaintiff further alleges that it is not so infringing, that such patent is invalid, and that such defendant has not instituted such suit (nor has the patentee). Thus, plaintiff claims defendants, and in particular defendant New Jersey corporation, are wrongfully damaging plaintiff's business.

The defendant New Jersey corporation, the only one served with process, now moves to dismiss the complaint and for summary judgment in its favor. F.R.C.P. rules 12(b), 56, 28 U.S.C. The specific grounds relied on by defendant on such motion are (1) lack of jurisdiction on the ground that no actual judicial controversy exists, (2) that defendant's affidavits indisputably disprove plaintiff's charge as to defendant's threats, so there is no "actual controversy" for this reason, as well, and (3) failure to join an indispensable party, F.R.C.P. rule 19.

As to the jurisdictional point, defendant claims there is no "actual controversy" between the parties within the meaning of the Declaratory Judgments Act above, since it alleges that defendant, such New Jersey corporation, the licensee, is not authorized to sue anyone to enforce the patent by infringement suits, or otherwise. Thus, if the licensee could not sue for infringement, since the present suit for declaratory judgment is but the converse of an infringement suit, the present suit is not based on an "actual controversy". As to defendant's third claim, of the lack of an indispensable party, defendant alleges that the patentee Zola, or its exclusive licensing agent, Zolatone, Inc., a California corporation, neither of whom are presently a party, are the only ones with sufficient interest in the patent to permit this suit to be brought involving the validity of the patent, and further that it, a mere licensee, has no such ownership rights, cannot sue others under the patent for infringement, and conversely cannot be sued by others, as here.

The parties have taken discovery proceedings. Therefrom it appears, without controversy, that defendant's rights as to the patent depend upon a so-called "license agreement" entered into by it November 1, 1949, with Zolatone, Inc. Zolatone previously had obtained from Zola, the patentee, and others, who had a previous agreement with Zola, "the sole and exclusive right to grant licenses, to make, use and sell products embodying * * * the inventions * * * above." By such agreement with defendant, Zolatone gave defendant "the sole and exclusive right to manufacture, use and sell Zolatone products" (products of the above patent) throughout the New England states, the middle Atlantic states, Florida, and the Dis-

trict of Columbia. This exclusive license extends from 1949 till 1955. This agreement further provided that Zolatone would "to the best of its ability protect (defendant) under any patents which may be granted to" (Zolatone). It further provided that "in case of infringement of patents granted on said applications" (of Zola), Zolatone would "commence and diligently carry on to conclusion at least one suit against an infringing manufacturer or user * * *." By a letter of the same date as the above, Zolatone gave defendant non-exclusive permission to sell Zolatone products throughout the United States, except for twelve far Western states. Such constitute the essential facts as to the status of defendant with regard to the patent in question, upon the basis of which the present motion is made.

#### Is There an "Actual Controversy" on Which the Present Suit is Based?

The first question here is, whether or not defendant has a right to sue for infringement of the patent, of which it was the exclusive licensee throughout the above broad territory. If it had such right, then all agree that this suit, the converse of an infringement suit, lies. Hook v. Hook & Ackerman, 3 Cir., 1951, 187 F.2d 52, 56; A. L. Smith Iron Co. v. Dickson, 2 Cir., 1944, 141 F.2d 3. As to this right to sue, the Hook case says, 187 F.2d at page 58: "Ordinarily, a mere licensee of a patent has no right to sue an infringer, and the patent owner is under no duty to do so. An exclusive licensee obviously is in a different situation. One charged with infringement or one charging infringement would ordinarily have the right to bring the owner into the action to prevent another suit on the same alleged wrong. But these principles have no application where, as here, the defendant-cross-complainant stands as the owner under the assignment." In short, one who is the substantial owner of a patent may sue alone, a mere licensee may not.

As to who is the substantial owner of a patent, for the purpose of bringing such suit, the Court in the Hook case noted at length the leading case of Waterman v. Mackenzie, 1891, 138 U.S. 252, 11 S.Ct. 334, 335, 34 L.Ed. 923. In the Waterman case, the Court alluded to the fact that under the patent act every patent contains

"a grant to the patentee, his heirs and assigns, for the term of seventeen years, of the exclusive right to make, use, and vend the invention or discovery throughout the United States * * *. The patentee or his assigns may * * * assign * * * the exclusive right under the patent within and throughout a specified part of the United States. * * * A transfer of * * * these * * * interests is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers * * * in the name of the assignee alone. Any assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringement. * * * Whether a transfer of a particular right or interest under a patent is an assignment or a license does not depend upon the name by which it calls itself, but upon the legal effect of its provisions. For instance, a grant of an exclusive right to make, use, and vend two patented machines within a certain district is an assignment, and gives the grantee the right to sue in his own name for an infringement within the district, because the right, although limited to making, using, and vending two machines, excludes all other persons, even the patentee, from making, using, or vending like machines within the district."

It is thus settled that an exclusive licensee to make, use and sell a patented article throughout a specified part of the United States, is substantially its owner and has impliedly the "right to sue infringers * * * in the name of the assignee alone." Since this is the very nature of defendant's rights here, defendant has the implied right to sue infringers, or conversely, as here, to have suit for a declaratory judgment brought against

it, by one who it claims is an infringer. The fact that defendant here had no express right to sue alleged infringers, a right the defendant had in the Hook case, is immaterial. The right of suit, the crux, exists, regardless of its source. Nothing in the license agreement revokes defendant's implied right to sue, as established by the Waterman case. All the agreement says about any such suit as the case at bar is, as above, that Zolatone shall protect defendant by suit, and in but a limited way. This obviously cannot mean that defendant is left defenseless as to such suits outside such limits. Its only reasonable meaning is that defendant retains such general right to sue, as substantial owner of the patent, according to the Waterman case, with Zolatone giving defendant supplemental protection within the agreed limits. Nor is it material that here the suit involves the validity of the patent, whereas such question was not directly involved in the Hook case. For if defendant, the substantial owner, had the right, as the Hook and the Waterman cases held, to recover damages from an infringer, obviously, as owner, he would have the right to sue to establish the validity of the patent which he owned,—same being the essential basis for his recovery of damages from an infringer.

Nor are Independent Wireless Telegraph Co. v. Radio Corp. of America, 1926, 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357; Fluorescent Fabrics, Inc. v. Gantner & Mattern Co., 86 U.S.P.Q. 67, S.D.Cal.1950; Alamo Refining Co. v. Shell Development Co., D.C.Del.1951, 99 F.Supp. 790, to the contrary. The Hook case distinguishes the Independent Wireless Telegraph case, showing that the United States Supreme Court treated the licensee there merely as a licensee both because "it was 'loath to depart * * * from the theory'" of the case adopted in the courts below and also because the licensee there could not make the patented article exclusively, i. e., he was not an assignee of the patent under the principles adopted in the Waterman case. Similarly in the Fluorescent Fabrics case, it is far from clear that the licensee there was such a substantial owner of the patent. And in the Alamo case [99 F.Supp. 800] the Court itself says that the licensing agent there had not "granted any part of the ownership of its patents * * * [or any] authority or control over the enforcement of such patents" to the then defendant.

On the other hand, both in the Dickson case, supra, and in Helene Curtis Industries v. Sales Affiliates, D.C.S.D.N.Y.1952, 105 F.Supp. 886, the courts held that a defendant could be sued alone, as here, where such defendant even lacked some of the important indicia of patent ownership which defendant here had. In the Dickson case the defendant licensee had only the right to make and sell, not the right to use the patented article. In the Curtis case the licensee was a mere licensing agent, but without any present right to make, use or sell the patented article.

Nor is the distinction material that, in the Hook case, the licensee had the express right to sue, absent here, and that the licensee's rights were not limited geographically as they are here. Both these factors are rendered immaterial by the decision in the Waterman case.

Further, just as it is immaterial that defendant's exclusive license is limited in territory, so is it immaterial that same is limited in time, as well as that defendant cannot sublet its own exclusive license without the licensing agent's approval. The basic reason as to all these is the same. Defendant's exclusive right to make, use and sell the patented article constitutes the full scope of the patent itself. As to such patent, it gives the exclusive licensee power to exclude everyone else in the world within its limits, even including the patentee. Thus such exclusive licensee, within those limits, both territorial and chronologic, is in truth the owner of the patent. As the owner of the patent, the fact that he cannot divest himself of ownership without the licensor's consent does not affect his right to exercise the full incidents of ownership, including the right to sue, as long as he remains such owner.

Defendant further claims there is no "actual controversy" on the theory that

it is indisputable that it has made no threats of suit to plaintiff's customers, and it asks summary judgment accordingly. Looking at the motion as one for summary judgment on this ground, it is noted that defendant's claim in this regard specifically is, that plaintiff's affidavits as to such threats are based on pure hearsay and are therefore allegedly no proof at all. To this plaintiff replies that such information lies solely with third parties, and that it therefore cannot furnish formal proof of same till its discovery in that regard is completed. Furthermore, reference to defendant's affidavits on such motion show that defendant's president, Klinkenstein, has told defendant's sales staff to say, when this question of infringing the Zola patent arises with its and plaintiff's customers, "that all questions of possible infringement are entirely in the hands of the attorneys". Depending on the circumstances, this may, of course, have meant to plaintiff's customers that they continue ·to buy mottled paints from plaintiff at their peril, and so constitute an implied threat of suit to the damage of plaintiff's business. If so, regardless of what plaintiff's discovery, as above, may ultimately reveal, defendant's own proof may raise an issue of fact as to such threats.

Not only is defendant's motion for summary judgment presently ill conceived, for the above reasons, but defendant overlooks the rule in effect in this circuit, though subject to question in other circuits and by text writers, that well-pleaded facts in the complaint suffice of themselves, regardless of affidavits, to create a fact issue requiring the denial of a motion for summary judgment. Frederick Hart & Co. v. Recordgraph Corp., 3 Cir., 1948, 169 F.2d 580; Reynolds Metals Co. v. Metals Disintegrating Co., 3 Cir., 1949, 176 F.2d 90.

Since this cause involves an "actual controversy", this Court has jurisdiction.

## Are the Patentee. and His Sole Licensing Agent "Indispensable", or Only "Necessary", Parties?

It is, of course, true, as said by Learned Hand, J., in Dickson, supra [141 F.2d 7], that "The law on that whole subject [of who are necessary, as distinguished from indispensable, parties in patent litigation] is obviously still in flux". On the other · hand, the Hook case has much stabilized these legal principles, based as they are, not only on the status of the parties and their rights to relief, but on the less precise consideration of their physical convenience. For instance, we here must consider the right and convenience of the patentee, or his exclusive licensing agent, to choose his own, and a single, forum, for the protection of his rights, as compared with the right, and convenience, of an alleged infringer to protect his business from unjustified interference by a limited owner of the patent, in the forum where such interference occurred and can be directly stopped, even though the original patentee and his licensing agent be far distant, and even though the alleged infringer may later be subject to another suit by such patentee.

As · the Hook case shows, an indispensable party is one whose interests in the subject matter of the suit and in the relief sought are so bound up with that of the other parties that without his presence and a binding adjudication as to his rights, the Court cannot proceed. Barney v. Baltimore City, 1867, 6 Wall. 280, 73 U.S. 280, 18 L.Ed. 825; Shields v. Barrow, 1854, 17 How. 129, 139, 58 U.S. 129, 139, 15 L.Ed. 158; State of Washington v. United States, 9 Cir., 1936, 87 F.2d 421. On the other hand "necessary" parties are "persons who are not indispensable, but who ought to be parties if complete relief is to be accorded between those already parties". F.R.C.P. rule 19(b). As to such parties "The court in its discretion may proceed in the action without making such persons parties, if its jurisdiction over them as to either service of process or venue can, be acquired only by their consent or voluntary appearance or if, though they are subject to its jurisdiction, their joinder would deprive the court of jurisdiction of the parties before it; but the judgment rendered therein does not affect the rights or liabilities of absent persons." Id. However, as the United States

Supreme Court has held "The rule is that if the merits of the cause may be determined without prejudice to the rights of necessary parties, absent and beyond the jurisdiction of the court, it will be done; and a court of equity will strain hard to reach that result." Bourdieu v. Pacific Western Oil Co., 1936, 299 U.S. 65, 57 S. Ct. 51, 53, 81 L.Ed. 42.

In applying these principles to the present situation, we therefore ask (1) what are the rights of the parties, in the light of the relief sought, (2) what is the relative effect upon the convenience of the parties, in permitting the present suit to proceed, or in requiring plaintiff to initiate proceedings in California against the original patentee and his sole licensing agent, Zolatone, Inc.? As to plaintiff, it, of this district, claims damage occurring in this district by the act of defendant, of this district. As relief, plaintiff seeks not only damages, but an injunction. Obviously, plaintiff's relief can best be obtained, as well as its convenience served, in this Court.

As to defendant Maas & Waldstein, a New Jersey corporation, which is alleged to have committed the wrong, this Court is also most convenient for it, and any relief it may desire may be granted by this Court. As seen above, it is the substantial owner of the patent throughout this general section of the United States, and can therefore both sue to protect its rights, and be sued in that regard, as here. Finally, as to the patentee Zola and his sole licensing agent, Zolatone, both of California, this forum is not to their convenience. California is. But if plaintiff were forced to go to California, its inconvenience and that of defendant would equal that of Zola and Zolatone in this Court. More importantly, if plaintiff did go to California defendant could refuse to appear. This would leave plaintiff without remedy against the very party that did the alleged wrong. Further, the patentee and his sole licensing agent cannot be affected by any adjudication in New Jersey in their absence, according to the express terms of the above rules of court. In addition, the licensing agent, Zolatone, has, by the above agreement, not only obligated itself to defend one such suit as this, but has obligated itself to set up a fund to pay the expenses of such litigation. In fact, the present defendant admits that its expenses are presently being paid by either Zolatone or Zola.

In short (a) complete relief can alone be had for plaintiff as to his present alleged wrongs, in this Court, not in California, (b) defendant is substantially the owner of the patent here and throughout this part of the United States, (c) while the matter of physical convenience of the parties is substantially in balance, the rights of the patentee Zola, and of his licensing agent, Zolatone, Inc., cannot be jeopardized by this suit, if they do not appear voluntarily, as they have the right to do, (d) Zola and Zolatone have by their agreements, made by them for their own benefit, not only given rise to the present situation by creating the present defendant as an exclusive licensee, but they have also agreed to defend such a suit as the present, and are presently furnishing the money to do so. For all these many reasons, while the presence in this forum of the patentee Zola and of his exclusive licensing agent Zolatone, Inc. would appear desirable, and while they are necessary parties for complete relief to be given all parties interested in the patent, they are not indispensable parties for this suit to proceed, where plaintiff alone can be assured of adequate relief from his alleged present wrongs at the hands of the present defendant.

Accordingly, defendant's motion to dismiss the complaint and for summary judgment is denied.