**TECHNICAL TAPE CORPORATION,**
Plaintiff,

v.

**MINNESOTA MINING AND MANUFAC-
TURING COMPANY, Defendant.**

United States District Court
S. D. New York.

Oct. 31, 1955.

See also, 18 F.R.D. 318.

Curtis, Morris & Safford, New York City, Daniel L. Morris, New York City, of counsel, for plaintiff.

Burgess, Ryan & Hicks, New York City, John F. Ryan, New York City, of counsel, for defendant.

LUMBARD, Circuit Judge.

The defendant Minnesota Mining and Manufacturing Company moves under Rules 12(b) and (d), Federal Rules of Civil Procedure, 28 U.S.C.A., to dismiss this suit for declaratory judgment or, in the alternative, to transfer the proceeding to the Northern District of Illinois pursuant to 28 U.S.C. § 1404

(a). The grounds for the motion to dismiss are two: (1) that there was not an actual controversy between the parties at the time the action was commenced on May 12, 1955, as required by the Declaratory Judgment Act, 28 U.S.C. § 2201; and (2) that Armour Research Foundation of the Illinois Institute of Technology, the owner of the patent, the validity of which is questioned, is an indispensable party and is not joined in the action and is not within the jurisdiction of the court. As the defendant's motion to dismiss must be sustained because of failure to join Armour, an indispensable party, the other questions need not be considered.

The complaint sets forth that plaintiff, Technical Tape Corporation, is a New York corporation with its principal place of business in this district, and that Minnesota is a Delaware corporation doing business in this district. It further alleges that Minnesota is the "substantial owner" of the Camras patent, United States Patent 2,694,656, issued on November 16, 1954 to Armour as assignee of the inventor Camras, which claims as new "certain magnetic iron oxide powders, methods of making them, and sound recording tapes carrying such powders". Technical asserts that it manufactures magnetic sound recording tape in the United States; that tapes manufactured by Technical and Minnesota contain magnetic iron oxides; that if Minnesota's claims under the Camras patents are construed as broadly as Minnesota asserts the magnetic sound recording tape manufactured and sold by Technical will be covered by said claims. Technical seeks a declaratory judgment that the Camras patent is invalid and not infringed.

To determine whether or not Armour is an indispensable party requires a careful analysis of the relationship between Armour as the grantor of certain rights under the patent and Minnesota to whom these rights have been granted. From the depositions of witnesses examined in the proceeding it appears that that relationship is set forth in a 31 page agreement between Armour and Minnesota dated March 25, 1954. An analysis of this agreement impels the conclusion that Armour has retained for itself such a continuing interest in the use of the patent and the proceeds to be received from its exploitation that it is an indispensable party to this suit.

To give a fair understanding of the agreement and such of its provisions as bear on the decision of this question the pertinent provisions of the Armour-Minnesota agreement may be summarized thus: Armour grants to Minnesota "a non-transferable (except to the successor of the entire business of Licensee) exclusive (subject to the provisions of Article XVIII hereof) license, with the right to grant sub-licenses, to manufacture or have manufactured in the United States and to sell or lease and use in the United States" magnetic record members having a non-magnetic backing and magnetic material incorporated in or coated upon the surface, and magnetic record material suitable for use in a magnetic record member. This has to do principally with the use of magnetic iron oxides on sound recording tape. Armour also grants to Minnesota a "non-exclusive license" to make, use, and sell magnetic recording and reproducing devices embodying various patented inventions. Armour expressly refrains from granting the right to manufacture, use, or sell recording and reproducing devices designed (a) for recording or reproducing visual images, (b) for use as a "dictionary, encyclopedia, or lexicon, or (c) for use as telephone answering devices. The agreement provides, however, that if Armour grants a license to another to manufacture, use, or sell any machine for recording or reproducing visual images of a pictorial character, Minnesota will have an option to obtain a similar license on terms at least as favorable as those offered to the other licensee.

Article XVIII specifies certain outstanding licenses to manufacture sound recording tape heretofore granted by Armour to Eastman Kodak, National Standard Company and Indiana Steel Products

Company. It also recites that Armour's "present and future magnetic recorder licensees may have the right to coat or stripe motion picture film with magnetic record material for amateur motion picture use only." Armour agrees to grant no further licenses and will consent to no assignment, sale, transfer or replacement of the existing licenses in the field of magnetic record members (recording tape) or magnetic coating material.

Under Article I Armour agrees to disclose to Minnesota certain engineering information regarding the construction and design of magnetic recording and/or reproducing devices, and Armour agrees to deliver to Minnesota one copy of each technical bulletin which Armour may prepare and deliver during the agreement to its magnetic recorder licensees.

Article II provides that Armour is to give a reasonable amount of assistance to Minnesota in the technical design of magnetic recording devices, record material and record members designed for the fields covered by the agreement embodying Armour's inventions and to consult with Minnesota with regard thereto.

Armour agrees to advise Minnesota promptly whenever any application relating "to the subject matter of this Agreement, which it owns or has the right to grant licenses thereunder, shall issue as Letters Patent." (Article III, sec. 5)

Armour is to receive a royalty of $2\frac{1}{2}\%$ of that portion of the selling price of any product which is allocable to the component manufactured under the Camras patent. This royalty is to be paid by the licensee with respect to any of the patented items made, sold, or leased by itself or by any sub-licensee. If under the terms of any sub-license Minnesota receives more than twice the royalty which it pays Armour, Armour is to receive 50% of the excess. Minnesota is required to make monthly reports to Armour and to keep adequate records as to its sales of patented items. (Article V)

Article XVII provides that if Armour shall at any time grant a license for the manufacture and sale of magnetic recording or reproducing devices for any of the fields of use covered by the agreement at a more favorable rate than $2\frac{1}{2}\%$ then Armour is to notify Minnesota which then has the option of having the agreement modified to include the more favorable rate.

Minnesota agrees to mark each recording or reproducing device manufactured by or for it "Manufactured under patent rights of Armour Research Foundation", and to mark each box of magnetic record material and each reel with the numbers of Armour's applicable United States patents. (Article IX)

Article XIX contains detailed provisions regarding litigation. Armour will, within ninety days after written request by licensee, bring through attorneys of its own selection such suits for infringement as may reasonably be necessary to prevent unlicensed competition from materially interfering with the business of licensee. Armour is not obligated to bring or have pending at any one time more than a reasonable number of such suits and upon request by Armour licensee shall bear the expense of such suit. In any such suit, after reimbursement of licensee for the expenses, the recovery shall be divided equally between Armour and Minnesota. With respect to any suit Minnesota may advise Armour that it will bear no further expenses and if Armour thereafter prosecutes such suit at its own expense it is entitled to the entire recovery. If Armour fails to commence suit within ninety days of request by Minnesota, and if the bringing of such suit would not result in the pendency of an unreasonable number of such suits, Minnesota is given the right to bring such suit in its and Armour's name, and Armour agrees to join in such suit as party plaintiff or to be so joined by Minnesota. The agreement contains no limitation upon Armour's right to bring suits in the absence of a request by Minnesota.

The agreement is to continue until December 31, 1970, but if Minnesota is at that time *selling* products under the patent it has the option to continue the license until the expiration date of the patent, November 1971. (Article XVI) Armour retains the right to terminate the agreement if the royalties for any year amount to less than $3,000 and the difference is not made up by Minnesota (Article XIII), or if Minnesota files a petition in bankruptcy or is adjudicated a bankrupt. (Article XV)

Armour also retains the right, upon six months notice, to grant licenses to others "if licensee and its sub-licensees are not reasonably supplying the public demand * * * in a form and quality satisfactory to the public demand * * *" unless Minnesota initiates reasonable steps to supply promptly the public demand. (Article XVIII) Minnesota may terminate at any time on ninety days notice. (Article XII)

 A patent owner has a property right which ought not to be adjudicated in his absence. This is a salutary principle which the courts have long recognized. Waterman v. Mackenzie, 1891, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923. It is only where the legal title is a naked one so that another is really the substantial owner and in complete control as in Helene Curtis Industries v. Sales Affiliates, D.C.S.D.N.Y.1952, 105 F.Supp. 886, affirmed 2 Cir., 1952, 199 F.2d 732, or where the owner is outside the country and can be reached only through his licensee whom he has in effect made his agent for purposes of suit, A. L. Smith Iron Co. v. Dickson, 2 Cir., 1944, 141 F.2d 3 that exceptions have been permitted to this principle.

Armour has in effect retained control of litigation which may be necessary or desirable to protect its patent from infringement. While Minnesota may bring an action only after advising Armour, Armour is free to act or not as it chooses. Even where Minnesota bears the expense of litigation Armour is entitled to have the suit conducted by its own attorneys. It has been held that where the patent owner retains under an "exclusive license" control of litigation to protect the patent, he is an indispensable party to an action brought against such licensee for a declaratory judgment that the patent is invalid. Fluorescent Fabrics, Inc., v. Gantner & Mattern Company, 86 U.S.P.Q. 67 (D.C.S.D.Cal.1950). Not only does Armour virtually control such litigation but it shares equally in any proceeds that may result, and where Minnesota does not wish to continue to bear the expense in certain contingencies, Armour may continue the litigation and retain all the proceeds. Furthermore from several of the provisions of the agreement it is apparent that Armour is to be active in continued research, development and exploitation of the patent in the fields where rights are granted to Minnesota and other fields as well. Far from enjoying mere naked title, Armour has retained the right of active supervision, the right to detailed information, and even the right to license others if Minnesota and its sub-licensees are not adequately supplying the public demand.

It is conceded that Armour is amenable to the process of the Illinois district court; Minnesota and Technical also do business and can be found there. See Minnesota Mining & Manufacturing Co. v. Technical Tape Corp., D.C.N.D.Ill. 1954, 123 F.Supp. 497, 498. We are not confronted with a situation as in A. L. Smith Iron Co. v. Dickson, supra, where failure to permit Technical to sue Minnesota without Armour would deny it the right to bring suit and leave Technical to be sued as, when, and where Armour might choose.

 Even if there were some doubt as to Armour's indispensability, this is an appropriate situation for exercise of the court's discretion not to entertain suit in this district under the Declaratory Judgment Act, 28 U.S.C. § 2201. Brillhart v. Excess Insurance Co. of America, 1942, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620. A judgment here would not resolve the controversy and would merely protract and prolong litigation between these three parties. It

is pertinent to this exercise of discretion that suit has already been commenced in the Northern District of Illinois by Armour against Technical for infringment of the Camras patent. The court there can determine the precise issues raised here. Although Armour's suit was not begun until May 27, 1955, fifteen days after Technical brought this suit against Minnesota, the court is not called upon merely to say which side won the hundred yard dash to some courtroom. There is an appropriate forum where the patent owner is not only available, but where it and the plaintiff here are already engaged in determining the same issue which is involved in this suit. Under such circumstances this court should exercise the discretion which the statute vests in it and dismiss the complaint in this district.

Motion to dismiss granted.