**DE LUXE GAME CORPORATION, Plaintiff,**

v.

**WONDER PRODUCTS COMPANY, a corporation, Defendant.**

**REMPEL MANUFACTURING, INC., Plaintiff,**

v.

**WONDER PRODUCTS COMPANY, Defendant.**

United States District Court
S. D. New York.
Sept. 22, 1958.

58

Keith, Bolger, Isner & Byrne, New York City, for plaintiff DeLuxe Game Corp.

Pennie, Edmonds, Morton, Barrows & Taylor, New York City, for plaintiff Rempel Manufacturing, Inc.

Kane, Dalsimer & Kane, New York City, for defendant.

BICKS, District Judge.

Two suits are pending in this Court against Wonder Products Company—one brought by Rempel Manufacturing, Inc., the other by DeLuxe Game Corporation—to declare U.S. Patents numbered 2,758,-632 and Reissue No. 23,849 invalid in law and not infringed by either of the plaintiffs.

The defendant's affinity for a district in which the validity of said patents has been sustained has engendered a series of motions consistent only with a purpose to avoid adjudication of the controversy here and at apparent odds with its intention, repeatedly proclaimed in paid advertisements inserted in trade journals, to vigorously protect its patent rights. Round one went against the defendant. My learned brother, Judge Herlands, in a lengthy and carefully reasoned opinion reported at 157 F.Supp. 696, 697, denied defendant's motion for the relief set out in the margin.[1]

The defendant is now before the Court on an application under Fed.R.Civ. P. 12(b) (7), to dismiss the counts of each of the complaints relating to U.S. Patent Reissue No. 23,849 for failure to join an indispensable party, or, in the alternative, to transfer both suits to United States District Court for the Western District of Tennessee, pursuant to 28 U.S.C.A. § 1404(a). The two patents involved in the litigation are closely related and it has not been made to appear that it would be desirable or in the interests of the efficient administration of justice to try the issues of validity and infringement separately as to each of them. The moving papers indicate that the alleged indispensable party, though not subject to the jurisdiction in personam of the aforesaid Tennessee District Court, would voluntarily submit thereto were this Court to grant the application to transfer. The suggestion implicit in this proffered submission to jurisdiction is that this Court lend itself to forum shopping. Courts have no

---

[1] "1. To quash the return of service of process on the grounds (a) that the defendant has not been properly served with the summons because the person upon whom service was made 'is not an agent, servant, officer or employee of defendant, nor otherwise competent to receive service of summons on behalf of defendant'; and (b) that the defendant 'cannot be properly served with process in this District because Defendant * * was not and is not subject to service of process within the Southern District of New York';

"2. To dismiss the action on the ground 'that there is lack of venue and jurisdiction' within the Southern District of New York for the reasons that (a) the defendant 'is not licensed to do business in New York and is not doing business in New York'; and (b) 'the complaint sets forth a Declaratory Judgment action to declare certain patents owned or by [sic] licensed by the Defendant to be invalid and/or not infringed and accordingly arises under the Patent Laws of the United States';

"3. Or, in the alternative, to transfer the action to the District Court for the Western District of Tennessee, Western Division, under the provisions of 28 U.S. C.A. § 1406(a)."

sympathy with such ill-advised endeavors. See Clayton v. Warlick, 4 Cir., 1956, 232 F.2d 699, 706.

The party alleged to be indispensable is one William Baltz, to whom U.S. Patent Reissue No. 23,849 (Original No. 2,437,015) was issued. On May 28, 1948, Baltz and one Andrew G. Manning, the defendant's predecessor in interest, executed a writing which has been variously denominated as a "license", "exclusive license agreement" and "agreement" in part providing:

"Party of the First Part [Baltz] hereby grants, conveys all rights, license, franchise unto and under said patent to Party of the Second Part [Manning, the defendant's predecessor in interest], his heirs, assigns, appointees, and successors to manufacture, make, design, construct, alter, modify and improve upon any articles to which said patent may be applicable, and to sell, acquire, deal in, purchase, dispose of, negotiate in relation to, promote sales of, advertise, and otherwise generally conduct business for the manufacture and sale of said article or articles throughout the United States and all foreign countries. Party of the First Part hereby expressly grants

to the Second Party, his heirs, assigns, appointees and successors all rights and franchises for the use, manufacture and sale of any and all articles under said patent exclusively for an indefinite term of years." [2]

The breadth of the granting clause and the rights conferred upon the transferee left no beneficial interest in the patent to the patentee.[3] The most formal instrument of absolute assignment could transfer no more. That the purchase price agreed to be paid by the transferee is deferred and is to be computed on the basis of a fixed stipend per article covered by the patent sold by the transferee does not transform the transaction into a mere license. Hook v. Hook & Ackerman, Inc., 3 Cir., 1951, 187 F.2d 52; American Type Founders, Inc., v. Dexter Folder Co., D.C.S.D.N.Y.1943, 53 F.Supp. 602. The defendant (having acquired through mesne assignments all the right, title and interest of Manning, the original assignee) is vested with a right to sue infringers in its name alone,[4] and conversely, is subject to a suit for declaratory judgment brought by one whom it charges with infringement. See Hartford National Bank & Trust Co. v. Henry L. Crowley & Co., 3 Cir., 1955, 219 F.2d 568; Hook v. Hook & Ackerman,

2. In a subsequent writing "indefinite terms of years" was defined as "during the life of said Patent 2,437,015 or said Reissue Patent 23,849."

3. In a subsequent paragraph of the writing the patentee reserved to himself the right to dispose of the relatively limited inventory he then had on hand.

4. In the now famous case of Waterman v. MacKenzie, 1891, 138 U.S. 252, 255, 11 S.Ct. 334, 34 L.Ed. 923, Mr. Justice Gray, speaking on behalf of a unanimous Court, stated:
"Every patent issued under the laws of the United States for an invention or discovery contains 'a grant to the patentee, his heirs and assigns, for the term of seventeen years, of the exclusive right to make, use and vend the invention or discovery throughout the United States and the territories thereof.' * * * The monopoly thus granted is one entire thing, and cannot be divided into parts, except

as authorized by those laws. The patentee or his assign may, by instrument in writing, assign, grant, and convey, either, 1st, the whole patent, comprising the exclusive right to make, use and vend the invention throughout the United States; or, 2d, an undivided part or share of that exclusive right; or, 3d, the exclusive right under the patent within and throughout a specified part of the United States. * * * A transfer of either of these three kinds of interests is an assignment, properly speaking, and vests in the assignee a title in so much of the patent itself, with a right to sue infringers; in the second case, jointly with the assignor; in the first and third cases, in the name of the assignee alone. Any assignment or transfer, short of one of these, is a mere license, giving the licensee no title in the patent, and no right to sue at law in his own name for an infringement."

Inc., supra; United Lacquer Mfg. Corp. v. Maas & Waldstein Co., D.C.D.N.J. 1953, 111 F.Supp. 139. See also Bendix Aviation Corp. v. Kury, D.C.E.D.N.Y. 1950, 88 F.Supp. 243, 250.

■ Defendant argues that the provisions of the instrument of transfer obligating Baltz, the patentee, to defend at his own expense the subject patent against claims of infringement made by others and to prosecute all infringements made or attempted to be made upon said patent, constitute him an indispensable party to this litigation. In so urging counsel overlooks the distinction between the rights of the transferor and transferee inter se as to maintenance, defense and bearing the expense of litigation in connection with the patent, and the status or position of the transferor vis-a-vis a third party who institutes a declaratory judgment suit. It appears expressly that Baltz's undertaking to maintain and defend litigation was for the benefit of the transferee. His said obligation did not whittle down in the slightest the absolute character of the conveyance, nor constitute the transferee, certainly as against third parties, other than what appears to have been the clear intent—owner of all rights under the patent. A complete and irrevocable assignment of a patent is not transformed into a license by a provision obligating the patentee to defend the patent at his own expense for the benefit of the transferee.

Defendant's reliance upon Independent Wireless Telegraph Co. v. Radio Corporation of America, 1926, 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357; Technical Tape Corp. v. Minnesota Mining and Mfg. Co., D.C.S.D.N.Y.1955, 135 F.Supp. 505 and Caldwell Mfg. Co. v. Unique Balance Co., D.C.S.D.N.Y.1955, 18 F.R.D. 258, is misplaced. The transfers involved in those cases did not purport to convey complete ownership within the doctrine of the Waterman case, supra. Thus, in Caldwell, supra, the licensee was granted the right to manufacture and vend, but not to use, and in Technical Tape, supra, the grant was of a non-transferable exclusive license as to some uses of the teachings of the patent, a non-exclusive license as to others and no rights whatever as to still others. Although Independent Wireless, supra, involved an exclusive license to make, use and sell, the case was tried and was determined by the Circuit Court of Appeals on the theory that an exclusive license, rather than a Waterman v. MacKenzie assignment was involved. The Court was "loath to depart, if it could, from the theory on which the bill was framed and both courts had acted, unless required to do so." 269 U.S. at page 463, 46 S.Ct. at page 168. It found that it was not "required to do so" and, therefore, accepted the premise upon which the courts below had proceeded.

■■ The Federal Declaratory Judgments Act, 28 U.S.C.A. § 2201 et seq., affords a much-needed remedy to the accused patent infringer enabling him to obtain prompt adjudication of his rights. He no longer need suffer the prejudice which results from being kept on the anxious seat. The patentee is deprived of the power to indefinitely adversely affect the business of an alleged infringer by threats, overt or otherwise. He no longer has the sole choice of time and form. See Borchard, Declaratory Judgments pp. 802–806 (2d ed. 1941). When an alleged infringer seeks to avail himself of this remedy, and the defendant raises the objection of failure to join an indispensable party, courts have carefully scrutinized the relationship between the defendant and the alleged indispensable party, mindful of the possibility of the existence of planned or convenient arrangements designed to retain control over the litigation. See, e. g., Helene Curtis Industries, Inc., v. Sales Affiliates, Inc., D.C.S.D.N.Y., 105 F.Supp. 886, 895–896, affirmed 2 Cir., 1952, 199 F.2d 732; Aberdeen Hosiery Mills Co. v. Kaufman, 96 U.S.P.Q. 133, 144–145 (S.D.N.Y. 1952); United Lacquer Mfg. Corp. v. Maas & Waldstein Co., supra 111 F.Supp. at page 144; Bakelite Corp. v. Lubri-Zol Development Corp., D.C.D.Del.1940, 34 F.Supp. 142, 144.

■■ The application for alternative relief, i. e., that both cases in their entirety be transferred pursuant to 28 U.S. C.A. § 1404(a) to the Western District of Tennessee need not detain us for any length. The contentions that the transfer will further the convenience of the movant, its witnesses and Baltz and that the ends of justice will best be served thereby have not been demonstrated. See Gulf Oil Corp. v. Gilbert, 1947, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055; Ford Motor Co. v. Ryan, 2 Cir., 182 F.2d 329, certiorari denied, 1950, 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624; Cressman v. United Air Lines, Inc., D.C.S.D. N.Y.1958, 158 F.Supp. 404, 407. Where a transfer would merely shift the inconvenience from one party to the other, Miracle Stretch Underwear Corp. v. Alba Hosiery Mills, Inc., D.C.D.Del.1955, 136 F.Supp. 508, or where after balancing all the factors, the equities lean but slightly in favor of the movant, Nocona Leather Goods Co. v. A. G. Spaulding & Bros., Inc., D.C.D.Del.1958, 159 F.Supp. 269, the plaintiff's choice of forum should not be disturbed. Defendant's urgings of inconvenience both to itself and to Baltz and of the alleged difficulty of establishing the validity of the patents at a trial held in this District are less than persuasive when considered against the background of their own prior conduct. They as plaintiffs during upwards of the last five years have instituted ten suits involving the validity of the patent, two in the District to which transfer is sought, three in the Northern District of Illinois and one in each of the following Districts: Eastern District of Arkansas, Southern District of California, District of Massachusetts, Northern District of Ohio and Western District of Oklahoma. No intimations have been made why New York is any less convenient for the defendant than California or Massachusetts. "It was not the intention of Congress to permit patent owners in patent controversies to avoid the application of the declaratory judgments statute." Bakelite Corp. v. Lubri-Zol Development Corp., supra 34 F.Supp. at page 144.

■ Apparently Baltz and the movant have been represented by the same counsel since 1950. If Baltz is of the view that such dual representation is undesirable (a situation which might arise if the suit, in his opinion, is or develops into a collusive one) or if for any reason he deems the protection of his right to receive the payments provided for in the agreement, requires his presence, he may enter this litigation. See Hook v. Hook & Ackerman, Inc., supra 187 F.2d at page 59; A. L. Smith Iron Co. v. Dickson, 2 Cir., 1944, 141 F.2d 3, 7.

Motions denied.