**Florence B. GOLDHAFT, Tevis M. Goldhaft, Burna C. Goldhaft, Nathan Wernicoff and Helen C. Wernicoff, co-partners, doing business as Vineland Poultry Laboratories, Plaintiffs,**

v.

**John H. MOORHOUSE, Moorhouse Turkey Hatchery, Inc., Clear Lake Breeders, Inc., Osakis Turkeys, Inc., Wrolstead Central, Inc., Minnesota corporations, Defendants.**

No. 4–69 Civ. 45.

United States District Court
D. Minnesota,
Fourth Division.

Dec. 2, 1969.

Meagher, Geer, Markham & Anderson, by Arthur B. Geer, Minneapolis, Minn., for plaintiffs.

Merchant & Gould, by John H. Gould, Minneapolis, Minn., for defendants.

NEVILLE, District Judge.

The present motion before this court seeks leave to join Swift & Company as an involuntary plaintiff or in the alternative as an involuntary defendant. The complaint filed herein alleges that the presently named defendants infringed certain patents of which plaintiffs were exclusive licensees and used the processes covered by these patents without paying royalties to the plaintiffs as such licensee. It stands admitted that one of the patents claimed to be violated, United States Patent No. 2,676,105 granted April 20, 1954, is, and at all times here involved has been, owned by Swift & Company.

It is alleged that on May 15, 1958 Swift & Company who then owned the patent entered into an exclusive licensing agreement with the plaintiffs. The defendants assert, however, that there is no evidence in the record that such agreement was an absolute assignment or such as to create the type of exclusive relationship which would allow the plaintiffs to bring the present suit.

It is agreed that whatever the relationship was between the plaintiffs and Swift & Company prior to 1967, that on June 15 of that year the plaintiffs became a non-exclusive licensee of Swift & Company under the patent. The alleged infringement began on or about December 1, 1964 and plaintiffs seek damages only during the period until June 15, 1967 when they were an exclusive licensee.

When the matter first came before this court on the motion of defendants to dismiss for failure "to join an indispensable party, namely Swift & Company, owner" of the patent, the court continued the matter on the representations of plaintiffs' counsel that defendants' position did have merit, and that it believed or hoped that Swift & Company would join voluntarily as a party. That effort failed and some 13 days prior to the continued hearing date the present motion to join Swift & Company as an involuntary party was filed.

There are several factors which remove this case from the typical textbook situation where there is a claimed infringement of a patent and it becomes necessary to bring in a party as an involuntary plaintiff. First, the plaintiffs seek only damages and do not request injunctive relief of the type which usually accompanies a prayer for relief in an infringement case. Second, and more significant, if the allegations of the plaintiffs are assumed to be true as it would seem they must be on a motion such as this, the suit is brought by a former exclusive licensee who has the status now and had the status when suit was begun of a non-exclusive licensee. Third, damages are sought only for the period beginning with the first alleged infringement in 1964 and ending on June 15, 1967 when the exclusive licensing agreement terminated.

██ The law seems to be well settled that the owner of a patent is an indispensible party to a suit claiming an infringement thereof. Waterman v. Mackenzie, 138 U.S. 252, 11 S.Ct. 334, 34 L.Ed. 923 (1891); Independent Wireless Telegraph Co. v. Radio Corporation of America, 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357 (1926). It seems rather clear that an exclusive licensee of a patent can force the owner of a patent into a suit as an involuntary plaintiff where the patent owner is out of the jurisdiction and does not desire to become a party. Independent Wireless Telegraph Co. v. Radio Corporation of America, *supra*; Deitel v. Chisholm, 42 F.2d 172 (2nd Cir. 1930), cert. denied, 282 U.S. 873, 51 S.Ct. 78, 75 L.Ed. 771 (1930). See also Merck & Co. v. Smith, 261 F.2d 162 (3rd Cir. 1958). On the other hand, it is settled and the parties so admit that a non exclusive licensee does not have the authority to force the patent owner to join a suit as plaintiff against his will. Holliday v. Long Mfg. Co., 18 F.R.D. 45 (D.C.N.C.1955), cert. denied 355 U.S. 926, 78 S.Ct. 384, 2 L.Ed.2d 357 (1958); Hook v. Hook & Acker-

man, Inc., 187 F.2d 52 (3rd Cir. 1951); Contracting Division A. C. Horn Corp. v. New York Life Ins. Co., 113 F.2d 864 (2nd Cir. 1940).

The question then facing this court is whether a former exclusive licensee who was a non exclusive licensee at the time of the commencement of the action, can force the indispensable owner of a patent to join as an involuntary plaintiff so as to enable the licensee to recover damages sustained during the period the licensee was an exclusive licensee. It is the status of the license at the time of the commencement of the suit or at the time the damages were sustained that is determinative of the licensee's rights vis a vis the patent owner?

■ The status of the owner of a patent as an indispensable party has arisen out of the desire of the courts to have all possible claims of infringement litigated in one action. This prevents the alleged infringer from having to defend legal actions more than once while different parties who have bona fide legally protected interests bring suit individually.

An exclusive licensee generally is able to force the patent owner involuntarily into a suit because it is the licensee who is the real party in interest. The owner may have little interest in what a third party infringer is doing and perhaps would rather tolerate an infringement than bring suit. But under an exclusive licensing agreement the owner does not have this freedom of action. There is a trust relationship between the owner of the patent and the exclusive licensee and the former must lend his name to the latter so that the latter might protect his exclusive right. Independent Wireless Telegraph Co. v. Radio Corp. of America, *supra*.

Conversely a non exclusive licensee does not have such an interest and it is the owner of the patent who has the paramount interest. The non exclusive licensee only has a privilege to do that which he could not otherwise do without the licensing arrangement and the owner has the freedom to do what he wants including tolerating infringers. The non exclusive licensee is not harmed since the owner could have licensed the infringer had he so desired, Western Electric Co. v. Pacent Reproducer Corp., 42 F.2d 116 (2d Cir. 1930), cert. denied 282 U.S. 873, 51 S.Ct. 78, 75 L.Ed. 771 (1930). There is a certain inconvenience in having to prosecute a patent infringement case and there is always a danger that the patent might be declared invalid. Thus the owner of the patent if forced into a suit could lose the patent in its entirety. Therefore courts should tread warily in allowing other parties to force an owner into unwanted litigation. Only an exclusive licensee has the interest necessary to force the patent owner to litigate.

Counsel have not cited nor does the court have knowledge of any cases where a court has had to meet the exact problem here presented of whether a former exclusive licensee can make the owner an involuntary plaintiff where the former seeks only to protect his rights which accrued under his former status. The case of Maguire Industries v. Harrington & Richardson Arms, 79 F.Supp. 81 (D.Mass.1948), involved a suit by a former exclusive licensee against an alleged infringer. At some point between the creating in the owner the status of an involuntary plaintiff and trial the alleged infringer moved for summary judgment. The motion was granted because under the agreement which terminated the exclusive licensing arrangement the licensee gave up all the rights which he had in the patent to the owner and thus divested himself of the cause of action. In the present case the court does not have the agreement or agreements between Swift & Co. and the plaintiff before it. The *Maguire* case gives credence however to the view that it requires more than a mere termination of the status of exclusive licensee to defeat the claimed cause of action of the plaintiff for damage during the exclusive license period.

■ This view is at least inferentially supported by the case of Colmol Company v. Goodman Manufacturing Co., 132 USPQ 126 (N.D.Ill.1961), where the court-ordered that the owner make a former exclusive licensee a plaintiff in an infringement action, thereby holding that the rights which an exclusive licensee has against an infringer are not automatically, without more, terminated by the termination of his exclusive licensing arrangement. He has the status of an exclusive licensee as to that period during which he was an exclusive licensee even after he has received a lessor status or relationship to the patent owner. It seems proper, then, that a now non exclusive licensee should still have the power to make the patent owner an involuntary plaintiff, to protect his interest. See also Channel Master Corp. v. JFD Electronics Corp., 263 F.Supp. 7 (E.D.N.Y.1967).

■ Defendants seek to thwart plaintiffs' effort on an argument that in reality they have questionable standing to raise, namely that an owner of a patent without an exclusive license outstanding should not be forced to litigate his patent and possibly lose it by having it declared invalid. However, it would seem to the court in any event that once the patent owner has created an exclusive license he is taking that risk within the limitations of the exclusive license that the licensee may have a claim covering the period during which he had that status, and the owner may thus indirectly be called upon to defend the validity of the patent. It is true that once the exclusive licensing arrangement has been terminated the patent owner has a greater interest in determining the status of the patent and seeing that it remains valid. However, even an exclusive licensee whose exclusive arrangement is limited to a specific time can force the owner to become an involuntary plaintiff. United Lacquer Mfg. Corp. v. Maas & Waldstein, 111 F.Supp. 139 (D. N.J.1953). It is difficult to distinguish between an owner who has a potential interest in the future of a patent because an exclusive license is about to terminate and one who has a present interest because the license has already terminated. There is no reason why the exclusive licensee should lose his rights on the day the exclusive arrangement ends, especially when it is possible that an infringement would not be discovered until after that date.

For the purpose of this motion, the court has taken as true the allegations of plaintiffs' complaint as to the existence until June 15, 1967 of an exclusive license. If in fact there was not such a license or if it contained contract provisions governing this situation, or if on the change of status a release was effected, or if there be other valid reason auguring for a result differing from that herein reached, Swift & Company after service of a process upon it, will have the right to bring a timely motion addressed to the court for a review of the decision herein reached.

A separate order has been entered.